UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSHUA BEAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CAUSE NO. 3:18-CV-741-JD-MGG |
| | ) |
| WARDEN, | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Joshua Bean, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (ISP 18-05-0020) where a Disciplinary Hearing Officer (DHO) found him guilty of counterfeiting or forging a document in violation of Indiana Department of Correction (IDOC) policy B-230 on May 15, 2018. ECF 1 at 1. As a result, he was sanctioned with the loss of 60 days earned credit time. *Id*. The Warden has filed the administrative record and Bean has filed a traverse. The Warden has also filed a reply to Bean's traverse and Bean has filed a surreply to the Warden's reply. Thus, the case is fully briefed.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder

of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

In this case, Bean was found guilty of violating IDOC offense B-230, which prohibits inmates from "[c]ounterfeiting, forging, or unauthorized reproduction or possession of any document, article, identification, money, passes, security or official

2

paper." Indiana Department of Correction, Adult Disciplinary Process: Appendix I.

http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf.

Joseph Schneider, a caseworker manager, wrote a conduct report charging Bean as follows:

> On Wed May 2nd 2018 shortly before 8am Law Library Supervisor Leonard called me, CM3 Joseph Schneider, and told me that Offender Bean 190546 from PC B1 4 had sent her legal work to be copied but that the notary page had been torn off of another piece of legal work and taped onto this one. I told her I would like to see it before she made copies and sent it to him. What she sent me was a hand written legal document but page 2 contained an area for a notary signature and seal previously signed by myself from a[] typed legal document. This previously notarized section was cut off of old legal work and taped on, also in the section that states when I notarized it the month and year have been covered in white out and changed to a more recent date. I did not make this change to the month and date of notarization nor did I notarize this piece of legal work for offender Bean especially since we are to notarize after they sign the form which he did not even do.

ECF 10-1 at 1.

On May 10, 2018, Bean was notified of the charge when he was served with the conduct and screening reports. ECF 10-1 at 1; 10-3 at 1. During his screening, he pled not guilty and asked for the assistance of a lay advocate. ECF 10-3 at 1; 10-4 at 1. Bean requested two witnesses—offender Mark Henry, who was his lay advocate, and Ms. Bessie Leonard, the law library supervisor. ECF 10-3 at 1. He also requested the prison's security video footage of offender Justice, who worked as a law library clerk, handling his legal paperwork and the video of him altering or forging the document at issue in this case. *Id*.

3

At the request of the hearing officer, offender Henry and Ms. Leonard provided written statements. On May 11, 2018, offender Henry wrote the following statement:

> I have been housed with offender Bean in B-block for approximately [two] years. Over that time span I've witnessed many snide/unprofessional responses to Mr. Bean's requests for legal work coming from Clerk Justice. Clerk Justice handles all the legal work requested from the PCU and has motive to retaliate against Mr. Bean due to his complaining to Ms. Leonard about Justice's poor quality work.

ECF 10-7 at 1. Ms. Leonard provided a statement in response to the hearing officer's question: "[w]hat law clerk handles PCU Requests?" ECF 10-8 at 1. Ms. Leonard stated: "I was the one to notice the altered documents for offender Bean. It was not found by any of my workers." *Id*.

The hearing officer held Bean's hearing on May 15, 2018. ECF 10-5 at 1. At the hearing, the hearing officer recorded Bean's statement: "There is no reason I would have done that. I have evidence that offender Justice is the only one who touches my legal work." *Id*. He also gave the hearing officer a handwritten statement in which he discussed the consequences of the guilty finding, accused offender Justice of framing him, and pleaded for mercy. ECF 10-6 at 1-2. On the basis of the conduct report, Bean's statement, witness statements, and the forged legal document, the hearing officer found Bean guilty of violating offense B-230. *Id*.

In his petition, Bean argues there are three grounds which entitle him to habeas corpus relief. ECF 1 at 2-3. In his first ground, he contends his due process rights were violated because the hearing officer denied his request to review the prison's security

video footage. ECF 1 at 2. During his screening, Bean requested video of offender Justice handling his legal paperwork and video of him allegedly altering or forging the legal document. *Id*. He requested this evidence to show that offender Justice received the legal document, altered it, and then reported it as a counterfeit document to Ms. Leonard in retaliation for complaining about the quality of offender Justice's work. *Id*. He further claims this evidence will prove that Ms. Leonard lied in her declaration when she stated she discovered Bean's forged document and that offender Justice did not have access to Bean's legal mail and he was not working on any Bean's legal documents pertaining to this matter. *Id*.

Inmates have a right to present relevant, exculpatory evidence in their defense. *Miller v. Duckworth*, 963 F.3d 1002, 1005 (7th Cir. 1992). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). However, contrary to Bean's assertion, he was not denied the right to present evidence at his hearing. Rather, the evidence he requested did not exist. The hearing officer denied his request for video footage because there are no surveillance cameras in the prison's law library. ECF 10-12 at 2, Leonard Decl. ¶ 9; 10-13 at 2, Anton Decl. ¶ 6; 16-1 at 2, Dustin Decl. ¶¶ 2-4. Therefore, Bean's first ground does not provide a basis for granting habeas corpus relief.[1]

---

[1] In Bean's surreply, he concedes there are no surveillance cameras in the law library. ECF 19 at 2.

In his second ground, Bean asserts that the hearing officer's written decision was arbitrary because she did not detail or explain why she "relied on certain [pieces of] evidence and . . . rejected other evidence." ECF 1 at 2. However, as a threshold matter, it does not appear that Bean has met the exhaustion requirement contained in 28 U.S.C. § 2254(b), as to this issue. *See* ECF 10-9 at 1-2. To have exhausted his administrative remedies, Bean must have properly presented the issue at each administrative level. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002).[2] Even if unexhausted, the court may deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

As to the merits of Bean's claim, due process requires that a fact-finder provide a written statement of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564-65. The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Here, the hearing officer stated the conduct report is "clear and concise" and the "[e]vidence supports the charge." ECF 10-5 at 1. While her statement is not lengthy, she identified the evidence she relied on in reaching her decision, including—Caseworker Manager Schneider's conduct report, Bean's statement, the statements of the two witnesses, and

---

[2] Bean has attached to his petition what he represents is his two-page administrative appeal. ECF 1 at 20-21. However, the second page (ECF 1 at 21) of that document differs from the second page (ECF 10-9 at 1) contained in the administrative record.

the forged document itself. *Id*. This is not complicated case and the hearing officer's statement leaves no doubt that she chose to credit Caseworker Manager Schneider's and Ms. Leonard's account of the events over Bean's version of the events. Because the hearing officer's written statement satisfied the minimal requirements of due process, his second ground does not identify a basis for granting habeas corpus relief.

In his third ground, Bean argues his due process rights were violated because he was denied a fair hearing before an impartial decision-maker. ECF 1 at 3. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id*. However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id*.

The record in this case shows there is no evidence to support Bean's claim that the hearing officer was biased. Initially, Bean claims the hearing officer violated IDOC policy because she collected the witness statements he requested at his screening instead of the screening officer. ECF 1 at 3. However, habeas corpus relief can only be granted for "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Failure to follow policy is not a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas

relief") and *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison did not follow internal policies had "no bearing on his right to due process"). Therefore, Bean's claim regarding violations of IDOC policy cannot be remedied in a habeas corpus petition.

Bean next argues that the hearing officer was partial because she participated in the investigation of the incident when she requested statements from offender Henry and Ms. Leonard. ECF 1 at 3. However, as discussed, Bean requested statements from these two witnesses during his screening and the hearing officer was simply following up on his request. Thus, Bean has not shown that the hearing officer was directly or otherwise substantially involved in the factual events underlying the disciplinary charges, or the investigation of the incident. *Piggie*, 342 F.3d at 666. Therefore, this third ground does not identify a basis for granting habeas corpus relief.

Furthermore, to the extent Bean's petition implies that the record lacks sufficient evidence to find him guilty of violating offense B-230, that contention fails. In assessing the sufficiency of the evidence, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. The conduct report recites that Ms. Leonard called Caseworker Manager Schneider and reported that Bean sent her a legal document to be copied; however, the notary page had been torn off of another piece of legal work and taped onto the document. ECF 10-1 at 1. Caseworker Manager Schneider confirmed that he had not notarized the document and explained that the notarized section of the document was from a previous document that he had

8

notarized for Bean. *Id*. He also explained that the month and year had been changed to a more recent date, which he had not done. *Id*. Photographs document the conduct report's description of the forged document. ECF 10-11 at 1-2. In sum, these facts alone constitute "some evidence" that Bean was guilty of violating offense B-230.

While Bean alleges that offender Justice tampered with his document in an attempt to frame him for complaining about the quality of offender Justice's work, the hearing officer considered and rejected Bean's assertion about the events in this case. Here, Bean is simply inviting the court to reweigh the evidence to gain a favorable outcome. However, the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence." *McPherson*, 188 F.3d at 786. Rather, it is the court's role to determine if the hearing officer's decision to revoke good time credits has some factual basis. *Id*. Because the hearing officer considered all of the salient evidence, there was no violation of his due process rights. *Hill*, 472 U.S. at 456-57 ("the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). In other words, the hearing officer's finding that Bean violated offense B-230 was neither arbitrary nor unreasonable.

As a final matter, Bean filed a motion (ECF 15) in which he requests a hearing and sanctions for the destruction of evidence. In his motion, he claims that offender Justice and Ms. Leonard purposely destroyed two exhibits attached to his traverse, which contained evidence exonerating him of the counterfeiting charge. ECF 15 at 1-4.

9

Here, Bean asserts that they destroyed Exhibits J and K when he sent his traverse to the law library for copying. *Id*. at 2. He claims that Exhibit J is an April 1, 2018, law library response from offender Justice in which he admits in the "memo" section to being the only person who processes Bean's legal work. *Id*. Bean next asserts that Exhibit K is a May 2, 2018, law library response from offender Justice in which he admits in the "memo" section to being the person who discovered the forged document and reporting the matter to staff. *Id*. According to Bean, Exhibits J and K are crucial pieces of evidence that prove his innocence and demonstrate perjury on the part of the respondents.

As discussed, inmates have a right to present relevant, exculpatory evidence in their defense. *Miller*, 963 F.3d at 1005. Exculpatory evidence constitutes evidence which "directly undermines the reliability of the evidence in the record pointing to the [prisoner's] guilt." *Meeks*, 81 F.3d at 720. Even if Bean is correct that offender Justice and Ms. Leonard destroyed Exhibits J and K, that would not have changed the outcome of this case because the alleged exhibits do not directly undermine his guilt. In other words, even if offender Justice is the only person who processes Bean's legal work and even if offender Justice discovered Bean's forged document, those allegations do not establish or prove that Bean did not alter the document as described by Caseworker Manager Schneider in his conduct report. Therefore, neither a hearing nor sanctions are warranted based on the alleged destruction of evidence, and Bean's motion (ECF 15) must be denied.

If Bean wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, the court:

(1) DENIES Joshua Bean's petition (ECF 1) for writ of habeas corpus;

(2) DENIES Joshua Bean's motion (ECF 15) requesting a hearing and sanctions for the destruction of evidence; and

(3) DIRECTS the clerk to close this case.

SO ORDERED on August 19, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT